652 So.2d 144 (1995)
Kimberly NORRIS and William Norris, Plaintiffs-Appellants,
v.
June GOEDERS and Travelers Insurance Company, Defendants-Appellees.
No. 26,130-CA.
Court of Appeal of Louisiana, Second Circuit.
March 10, 1995.
Writ Denied June 2, 1995.
*145 Wellborn Jack, Jr., Shreveport, for appellants.
Julie Mobley LaFargue, Shreveport, defendant, June Goeders and Travelers Ins. Co.
Steven E. Soileau, Shreveport, for intervenor-appellee, Nat. Pizza Co. and The Home Ins. Co.
Before NORRIS, LINDSAY, HIGHTOWER, BROWN and WILLIAMS, JJ.
BROWN, Judge.
Plaintiff, William Norris, was severely injured in an automobile accident during the course of his employment with the National Pizza Company ("NPC"). He received workers' compensation benefits from NPC and its workers' compensation insurer, The Home Insurance Company. These parties intervened in plaintiff's suit against the thirdparty tortfeasor seeking subrogation for medical expenses and disability benefits paid.[1] Following mediation, settlement and satisfaction of intervenors' lien, plaintiff sought to recover part of his attorney fees and litigation costs from intervenors. Plaintiff filed a rule directing the intervenors to show cause why they should not be ordered to bear a portion of the fees and costs. The rule was denied and plaintiff appeals. We reverse.

FACTS
On March 17, 1991, William and Kimberly Norris were driving westbound on Shreveport-Barksdale Boulevard when their path was unexpectedly crossed by another automobile driven by June Goeders. A collision ensued and Mr. Norris suffered severe injuries to his leg and foot. At the time of the accident, Mr. Norris was acting in the course and scope of his employment with Pizza Hut, Incorporated, a subsidiary of NPC. Shortly thereafter, the Norrises engaged the services of Shreveport attorney Wellborn Jack, Jr.
Suit was filed against defendants, Goeders and her liability insurer, Travelers Insurance Company, on November 5, 1991. Written notice of the filing of this suit was not provided immediately to Mr. Norris's employer or its workers' compensation insurer. While the issue of liability initially appeared to be clearcut, further investigation revealed that Mr. Norris had entered the crash-scene intersection while the traffic signal was yellow. When settlement attempts were thwarted by what were perceived as unreasonably low offers from defendants, Mr. Jack concluded that the issue of liability would be heavily contested. Discovery efforts commenced.
Trial preparations advanced with Mr. Jack enlisting the assistance of vocational rehabilitation, economic, medical and other expert witnesses. Plaintiff was informed by letter in April 1992 that NPC and The Home Insurance Company planned to intervene in the suit to recover compensation benefits paid to Mr. Norris. An intervention petition was *146 subsequently filed on July 13, 1992. Thereafter, intervenors obtained copies of the fact witnesses' depositions and prepared a stipulation regarding the amount of compensation benefits, past and future. In intervenors' opinion, the issue of liability was clear, the damages set at a fixed amount and no additional effort was needed to protect their interest.
Meanwhile, settlement efforts continued between plaintiff and defendants. In October 1992, the parties submitted to non-binding mediation. Intervenors were notified of a proposed date for the mediation, but declined to attend the meeting. A settlement agreement was reached following lengthy negotiations on October 26, 1992. The agreedupon settlement totaled $237,500. A forty percent attorney's contingency fee ($95,000) was deducted, along with various costs and anticipated future expenses. Intervenors' compensation lien totaling $22,171.98 was satisfied and after deducting attorney fees and costs, plaintiff was left with $111,069.60.
On November 20, 1992, plaintiff made a demand on intervenors for the payment of a proportionate share of the attorney fees and litigation costs incurred in obtaining recovery. Plaintiff sought $7,383.27 in attorney fees representing one-third of the total recovered by intervenors. Plaintiff also sought $291.08 in litigation costs based on the proportion of intervenors' recovery to the total recovery. When payment was refused, plaintiff filed a rule to show cause against intervenors. The rule was subsequently amended to increase the disputed litigation costs to $303.53.
The trial of the rule was conducted in late April 1993. Noting plaintiff's failure to provide timely, written notice of the suit to intervenors, the trial judge concluded that plaintiff was not entitled to an apportionment of fees and costs. Plaintiff appeals.

DISCUSSION

Failure to Provide Notice
In its written opinion, the trial court stressed plaintiff's failure to provide timely, written notice to intervenors regarding the filing of suit. The notice provision is found in LSA-R.S. 23:1102(A), which reads as follows:
If either the employee or his dependent or the employer or insurer brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit.
The term "forthwith" is defined by Webster's New Twentieth Century Dictionary as "immediately; without delay; directly." In the instant case, it is undisputed that no formal, written notice was provided "forthwith" to the employer and workers' compensation insurer. Plaintiff filed suit in November 1991. Although the record is unclear, it appears that intervenors may have been informally aware of plaintiff's action before and after suit was filed. However, the earliest date on which plaintiff provided formal, written notice concerning the suit was April 6, 1992. The trial court concluded that plaintiff's delay in providing notice diminished intervenors' role in the litigation and held intervenors not liable for fees and costs. We cannot agree.
As a starting point, we note that the statutory provisions in question provide no penalty, under the circumstances of the instant case, for failure to provide the notice required in LSA-R.S. 23:1102(A). The notice provision itself is silent as to consequences of noncompliance. LSA-R.S. 23:1102(B) provides a penalty where an employee compromises with the third-party without providing notice to the employer and insurer that a suit was filed. The penalty imposed for such action is the forfeiture of the employee's right to future compensation, not a release from liability for fees and costs in favor of intervenors. In the subject case, however, no compromise was reached until after notice was given and the intervention suit filed. The only penalty provision found in LSA-R.S. 23:1102 is, therefore, not applicable under the facts of this case. LSA-R.S. 23:1103(C) recognizes the intervenors' liability for fees and costs in a suit filed against a third-party tortfeasor; however, this liability is not made contingent upon the receipt of *147 timely, written notice concerning the filing of suit. Thus, the workers' compensation statutes prescribe no penalty for failure to comply with LSA-R.S. 23:1102(A) where, despite the lack of timely notice, an employer and compensation insurer successfully intervene in an employee's suit.
The purpose behind the notice provision of LSA-R.S. 23:1102(A) is promotion of a preference for timely intervention by the employee or the employer and its insurer when the other party has filed suit against the third-party tortfeasor. Such intervention prevents the third-party tortfeasor from having to defend against two separate lawsuits on the same delictual and quantum facts. Furthermore, intervention protects the employer from losing his right to indemnification in the event of a lawsuit by the employee against the tortfeasor. Roche v. Big Moose Oil Field Truck Service, 381 So.2d 396 (La. 1980); Scott v. Barclay's American Leasing Service, 506 So.2d 823 (La.App. 1st Cir.1987), writ denied, 508 So.2d 88 (La.1987). While the notice provided in the instant case did not meet the requirements of LSA-R.S. 23:1102(A), the goal sought to be achieved by that provision was realized. The employer and its insurer fully recouped the amount paid as workers' compensation benefits.
The relevant statutory provisions are silent concerning a penalty for failure to provide timely notice to intervenors when an employee has filed suit against a third-party tortfeasor. In the instant case, a delinquent notice still served to fulfill the goals sought to be achieved by the notice requirement. In the absence of prejudice to intervenors, we decline to enforce the penalty fashioned by the trial court. The failure to provide timely, written notice under these facts will not absolve intervenors of liability for their proportionate share of litigation costs and fees.

Apportionment of Fees and Costs
The apportionment of fees and costs among plaintiffs and intervening compensation carriers or employers was established in Moody v. Arabie, 498 So.2d 1081 (La.1986). In Moody, the court held that the plaintiff and the intervening compensation insurer were co-owners of the right to recover damages from the third party, and as co-owners, they were obligated to bear their proportion of the reasonable and necessary litigation expenses, including attorney fees, according to their interests in the recovery. The intervenor's interest in the recovery was calculated as follows:
 Intervenor's Interest in the Recovery = Intervenor's Recovery
 ------------------------------
 Total Recovery from Third Party
This ratio established the percentage of plaintiff's reasonable attorney's fees and litigation costs that intervenor was expected to bear. The attorney's fee to be apportioned must be assessed by the standards of the Code of Professional Responsibility Rule DR 2-106(A), which prohibits a lawyer from collecting an unreasonable fee. Finally, to qualify as a reasonable and necessary cost of recovery, the court held that the fee must relate to necessary services which actually benefitted or augmented recovery from the third person, rather than duplicative services or those designed to benefit a single party. Moody, 498 So.2d at 1086.
The apportionment of attorney fees was clarified further in Taylor v. Production Services, Inc., 600 So.2d 63 (La.1992). In Taylor, the plaintiff and his attorney entered into a contingency fee arrangement. The court noted that implicit in the Moody decision is the concept that it is the court which determines a reasonable attorney's fee. In determining a reasonable attorney's fee, the court is not bound by or limited to the contingent fee contract or the precise amount actually charged.
*148 LSA-R.S. 23:1103(C), added by Act 454 of 1989, effective January 1, 1990, codifies the intervener's liability for reasonable litigation costs and fees while providing a cap for the apportionment of legal fees between the employer and employee in a suit against a third party. LSA-R.S. 23:1103(C) states in part the following:
If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for reasonable legal fees and costs incurred by the attorney retained by the plaintiff. Such reasonable legal fees shall not exceed one third of the intervenor's recovery for pre-judgement payments or pre-judgement damages.
This article must be read in conjunction with Moody and Taylor. Moody established an obligation to apportion the fees and costs of litigation among plaintiffs and intervenors and provided the analytical framework for such apportionment. Taylor clarified the notion of reasonable attorney fees for apportionment purposes and restated the power of the court to establish these fees. LSA-R.S. 23:1103(C) recognizes the obligation identified in Moody and limits the intervenor's liability for plaintiff's attorney's fees to an amount not to exceed one-third of the benefits paid the employee by the employer or its compensation insurer. The statutory language applies this one-third cap only to fees and not to litigation costs.
I. A Reasonable Attorney's Fee
In the instant case, plaintiff entered into a contingency fee arrangement with his attorney for forty percent of the total recovery. While we are not bound by or limited to this agreement, it provides a starting point for our analysis.
Perceiving a threat to his ability to prove liability, plaintiff's attorney embarked upon an aggressive discovery process. Fact and expert witnesses were deposed. Records were gathered and analyzed to prove defendants' liability at trial. In the meantime, counsel continued to negotiate with defendants in an effort to reach a settlement. The attorney's skill and effort during a lengthy mediation process ultimately resulted in a recovery of $237,500 and full satisfaction of intervenors' lien. We cannot conclude that the 40% fee is unreasonable under these circumstances.
We must then decide whether counsel's efforts actually benefitted or augmented recovery for intervenors. Intervenors argue that counsel's efforts were directed at proving general damages, which did not bear on their interest in the suit. We cannot agree. The whole of counsel's efforts was directed toward reaching a settlement figure that would be satisfactory to his client. While settlement offers were made which would have fully satisfied intervenors' lien, they were not acceptable to plaintiff. Until counsel negotiated a satisfactory settlement, both plaintiff and intervenors were faced with the prospect of a trial and all of its uncertainties. The continued and cumulative efforts of plaintiff's attorney resulted in the full satisfaction of intervenors' lien. Intervenors' suggestion that they benefitted only from the deposition of fact witnesses is not only unpersuasive, it is also at odds with the realities of contingency fee arrangements and billing practices. It is not possible to precisely identify what portion of the attorney's efforts was directed toward proving a particular element of the case in this contingency fee billing arrangement. Records sufficient to facilitate such analysis generally are not maintained in contingency fee cases and do not appear to have been kept in this instance.
In light of the foregoing, we conclude that $95,000 is a reasonable fee. Intervenors should bear their proportionate share of this reasonable fee, subject to the cap established by LSA-R.S. 23:1103(C). Intervenors' liability for attorney fees is calculated as follows:
*149
Intervenors' Interest in the Recovery = Intervenors' Recovery = $ 22,171.98 = 9.34%
 ------------------------------ ------------
 Total Recovery from Third Party $237,500.00
Intervenors' proportionate Share = 9.34% × $95,000 = $8,873.00
or Reasonable Attorney's Fee
Cap on Intervenors' Liability = 1/3 × $22,171.98 = $7,389.92
per LSA-R.S. 23:1103(C)
Thus, while intervenors' proportionate share of the attorney's fee is $8,873.00, their liability is limited to $7,389.92.

II. Costs of Litigation
In addition to sharing in attorney fees, intervenors are also liable for their proportionate share of the costs of litigation. LSA-R.S. 23:1103(C); Moody, supra. Plaintiff compiled a list of expenses totaling $3,253.31 and sought to have intervenors bear a portion thereof based on their interest in the recovery. Again, the trial court denied recovery.
Intervenors contend that expenses associated with deposing expert witnesses relate to matters not relative to their interest in the case. Intervenors also oppose imposition of costs for court reporting services, urging that they had to purchase copies of depositions from defendants' counsel. Finally, intervenors argue that expenses associated with obtaining hospital bills are duplicative because intervenors had their own copies of the bills and would have provided them if plaintiff's counsel had asked. These arguments are not persuasive.
The costs associated with developing expert testimony and the recording of depositions were all necessary for the satisfactory resolution of the dispute. These costs funded litigation tools that helped facilitate the satisfaction of intervenors' lien. Furthermore, the fact that intervenors purchased photocopies of these depositions does not relieve them from sharing the costs associated with the actual taking of the depositions. As for the health care bills, they too were critical to the final settlement in this case. This information should have been offered to the plaintiff rather than withheld pending a request.
The costs compiled by plaintiff are all reasonable and served to facilitate the settlement of this case. Intervenors should thus bear their share of these costs in proportion to their interest in the recovery:
Intervenors' Interest in the Recovery = Intervenors' Recovery = $ 22,171.98 = 9.34%
 ---------------------------- ------------
 Total Recovery from Third Party $237,500.00
Intervenors' Proportionate Share = 9.34% × $3,253.31 = $303.86
of Reasonable Litigation Costs
This amount is in addition to the attorney's fee calculated above and is not subject to the cap imposed by LSA-R.S. 23:1103(C).

CONCLUSION
The judgment of the trial court denying apportionment of reasonable fees and litigation costs is reversed. Intervenors are ordered to reimburse plaintiff in the amount of $7,389.92 for legal fees and $303.86 for litigation costs[2]. All costs are to be borne by intervenors.

REVERSED.
HIGHTOWER, J., dissents with written reasons.
*150 HIGHTOWER, Judge, dissenting.
Even assuming arguendo that plaintiffs (despite not complying with LSA-R.S. 23:1102) can demand contributions to the litigation expenses, the majority's mechanical application of the Moody formula results in the assessment of an excessive attorney's fee against intervenors under the circumstances existing here.
I respectfully dissent.
NOTES
[1] Parties plaintiff throughout the history of this case included both Mr. Norris and his wife. However, the issues before this court pertain solely to the interests of Mr. Norris. We therefore have referred only to Mr. Norris in this opinion.
[2] Due to rounding, our figures differ slightly from the sums sought by plaintiff.