# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-46**

**THERESA S. HATCHELL**

**VERSUS**

**ST. MICHAEL PFU, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – District No. 3
PARISH OF CALCASIEU, NO. 20-04651
MELISSA A. ST. MARY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Chief Judge, Van H. Kyzar, Candyce G. Perret, Sharon Darville Wilson, and Gary J. Ortego, Judges.

**AFFIRMED IN PART AS AMENDED;**
**REVERSED IN PART;**
**RENDERED; AND REMANDED.**

**Kevin L. Camel**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Theresa S. Hatchell**

**Patrick A. Johnson**
**Parker and Landry, LLC**
**4023 Ambassador Caffery Parkway, Suite 320**
**Lafayette, LA 70503**
**(337) 362-1602**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **St. Michael PFU, LLC**

**KYZAR, Judge.**

In this workers' compensation matter, the plaintiff, Theresa S. Hatchell, appeals from a judgment rendered by the workers' compensation judge in favor of the defendant, St. Michael PFU, LLC. The judgment held that Ms. Hatchell forfeited her right to future workers' compensation benefits when she failed to obtain the defendant's approval prior to settling her third-party claims for injuries that aggravated her work-related injury. For the following reasons, we affirm in part as amended, reverse in part, render, and remand.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hatchell, a certified nursing assistant, suffered a work-related injury to her neck and left shoulder on May 23, 2012, while transferring a patient from their bed to a wheelchair. Her employer, St. Michael PFU, LLC d/b/a The Care Center of DeQuincy (Defendant), commenced paying indemnity benefits on June 15, 2012, as well as medical expenses on July 5, 2012. During the course of her treatment, Ms. Hatchell underwent a right C5-6 anterior cervical discectomy and total disc arthroplasty on June 27, 2017, as well as numerous pain-management treatments, including multiple cervical epidural-steroid injections, radiofrequency ablations, facet blocks, medial branch blocks, selective nerve root blocks, and physical therapy.

In 2018, Ms. Hatchell was involved in car accidents on May 25, 2018 and December 13, 2018. She was involved in a third accident on April 14, 2019. On May 28, 2019, she underwent removal of the C5-6 arthroplasty device, as well as an anterior cervical discectomy and fusion of C5-6 and C6-7. The medical records of Ms. Hatchell's treating physicians indicated that the last two accidents aggravated her work-related cervical injury. Without notifying Defendant, Ms. Hatchell settled her third-party claims for the December 13, 2018 and the April 14, 2019 accidents for approximately $35,000.00 and $15,000.00, respectively.

On July 31, 2020, Ms. Hatchell filed a disputed claim for compensation, alleging a claim for penalties and attorney fees based on Defendant's November 23, 2019 termination of her indemnity benefits. In its October 5, 2020 answer, Defendant affirmatively alleged that Ms. Hatchell was no longer entitled to workers' compensation benefits because her three "accidents were separate and intervening causes and not the natural or expected consequence of her original alleged work related [sic] injury." Defendant later amended its answer to allege that because the accidents aggravated Ms. Hatchell's work-related injury, she forfeited her claim to future workers' compensation benefits when she failed to obtain its written approval before settling her claims with the third-party insurers.

This matter proceeded to a trial on the merits on July 21, 2021. At the start of the trial, the parties stipulated that Ms. Hatchell suffered a work-related accident to her neck and left shoulder on May 23, 2012; she received medical treatment from Drs. Erich Wolf, Vanchi Vu, and Joseph Gillespie; she underwent two surgeries on her neck; her average weekly wage was $492.88, with a compensation rate of $328.88; Louisiana Healthcare Self-Insurance Fund provided insurance coverage; and Risk Management's claim file contained no written approval allowing Ms. Hatchell to settle her third-party claims. At the close of the trial, the workers' compensation judge (WCJ) took the matter under advisement.

On September 16, 2021, the WCJ rendered judgment finding that Defendant's payment of supplemental earnings benefits (SEBs) to Ms. Hatchell interrupted prescription for its payment of temporary total disability benefits (TTD). Thus, the WCJ awarded Ms. Hatchell TTD for the period of June 27 through July 11, 2017, and awarded her $2,000.00 in penalties and $7,500.00 in attorney fees. The WCJ further held that because Ms. Hatchell's December 13, 2018 and April 14, 2019 accidents aggravated her work-related injury, she was required to obtain Defendant's

2

written approval before settling her third-party claims. The WCJ held that based on Ms. Hatchell's failure to do so, she forfeited her right to future compensation benefits, including medical expenses. However, it further held that "Defendant failed to carry its burden of proving entitlement to a credit as no evidence was presented as to what portion of Claimant's motor vehicle settlements were attributable to the aggravation of Claimant's work-related cervical injury." It is from this judgment that Ms. Hatchell appeals.

Ms. Hatchell raises three assignments of error in the form of issues presented on appeal:

1. Whether the employer proved that claimant suffered an actual aggravation to her work-related condition as a result of subsequent non-work-related accidents and the amount of any such aggravation.

2. Whether the OWC judge properly found that the claimant forfeited her right to workers' compensation benefits when the employer failed to prove that it paid any additional benefits as a result of the subsequent accidents.

3. Whether claimant is entitled to penalties and attorney fees for the employer's unjustified termination of benefits without any evidence of an aggravation and without proving that it paid any additional benefits as a result of the subsequent accidents.

**OPINION**

The appellate standard of review applicable in workers' compensation matters was set forth by the supreme court in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (alteration in original), as follows:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93-1530 at p. 5, 630 So.2d

3

at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

The main issue on appeal is whether Ms. Hatchell forfeited her right to future workers' compensation benefits pursuant to La.R.S. 23:1102(B) as a result of her unauthorized settlements. Louisiana Revised Statutes 23:1102(B) provides, in part:

If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses.

As noted by the supreme court in *Haynes v. United Parcel Service*, 05-2378, p. 4 (La. 7/6/06), 933 So.2d 765, 768 (per curiam):

La. R.S. 23:1101 recognizes the right of the employer or employee to seek redress from a third person causing injury to the employee. *See Roche v. Big Moose Oil Field Truck Service*, 381 So.2d 396 (La.1980). La. R.S. 23:1102(A)(1) provides that if an employee brings suit against a third party as provided by La. R.S. 23:1101, the employee is required to give the employer notice in writing of this suit. The purpose of this requirement is to promote timely intervention by the employer and protect the employer from losing its right of indemnity. *See Norris v. Goeders*, 26,130 (La.App.2d Cir.3/10/95), 652 So.2d 144, *writ denied*, 95-0933 (La.6/2/95), 654 So.2d 1106. Pursuant to La. R.S. 23:1102(B), if the employee fails to notify the employer of the suit against the third party or fails to obtain written approval of a compromise from the employer, the employee "shall forfeit the right to future compensation, including medical expenses[.]"

At the heart of this issue is the question of whether the parties Ms. Hatchell settled with qualified as "third parties" pursuant to La.R.S. 23:1101(C). That statute provides that with regard to an employee's suit against a third person, a "'third person' shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay

4

benefits under this Chapter because the injury by the third party has aggravated the employment related injury." La.R.S. 23:1101(C). Applying a plain reading of this statute, we conclude that Defendant's burden of proving that the settling parties were third persons is two-fold: Defendant must prove (1) an aggravation of the work-related injury, and (2) the payment of benefits as a result of the aggravation. The failure to satisfy both elements will defeat Defendant's claim that Ms. Hatchell forfeited her right to future workers' compensation benefits based on her failure to obtain its written approval of the settlements.

*Assignment of Error Number One*

In her first assignment of error, Ms. Hatchell argues the WCJ erred in finding that the injuries she suffered as a result of the December 13, 2018 and April 14, 2019 accidents aggravated her work-related neck injury. We disagree.

Ms. Hatchell admitted that she was involved in these accidents subsequent to her work-related accident. She further admitted that she settled her claims with the insurers involved in these accidents without first obtaining written approval from Defendant. However, she claimed that neither of these accidents aggravated her work-related neck injury, increased her work restrictions, or caused her to miss work. Ms. Hatchell claimed that these accidents only irritated her neck pain, and she denied telling either Drs. Vu or Wolf that her neck pain had worsened as a result of the accidents. While she admitted that Dr. Vu administered a trigger point injection, she claimed that this occurred following the May 25, 2018 accident. She further testified that this was not the first time she had received a trigger point injection from Dr. Vu. She further denied that Dr. Vu prescribed a pain patch after the December 13, 2018 accident.

According to the medical records, Ms. Hatchell reported that her neck symptoms worsened after both the December 13, 2018 and the April 13, 2019

5

accidents. On January 18, 2019, Ms. Hatchell, who was seeing Dr. Clark Gunderson for her lumbar issues following the December 13th accident, reported that her preexisting neck pain was worse since the accident. In his January 18, 2019 letter to her then counsel, Dr. Gunderson stated that in addition to her lower-back pain, Ms. Hatchell had left-sided neck pain, which radiated into her left shoulder, as well as "discomfort and numbness in her left upper extremity, which is unchanged from prior to the motor vehicle accident." With regard to Ms. Hatchell's neck pain, it was Dr. Gunderson's impression that Ms. Hatchell "has sustained a cervical injury superimposed on a previously operated cervical spine that had discomfort prior to the recent motor vehicle accident."

On January 23, 2019, Ms. Hatchell told Dr. Vu that she was suffering "low back pain with radicular pain in left leg and spasm and constant pain in neck[]" as a result of the December 13th accident. Based on Ms. Hatchell's complaints, Dr. Vu administered trigger point injections to her bilaterally in the trapezius and levator scapulae and the right rhomboid muscles. On January 30, 2019, Ms. Hatchell reported to Dr. Wolf's assistant that her "cervical pain has increased since the wreck and she is now experiencing pain into her lumbar and down left leg – into posterior aspect of left calf." Based on her increased pain and radiculopathy, Dr. Wolf ordered an updated cervical MRI. In addition to his previous assessment of Ms. Hatchell's condition, Dr. Wolf now added C6-7 disc disorder with radiculopathy. The February 2, 2019 MRI revealed disc bulges at C3-4 and C4-5, postoperative changes at C5-6, and a broad-based disc herniation, mild central canal narrowing and bilateral neural canal narrowing at C6-7. This was similar to the findings of an August 14, 2018 MRI.

Dr. Vu's record of May 9, 2019, states that Ms. Hatchell complained of "neck pain with radiation to entire left arm and lower, lateral aspect of left hand with

6

numbness[]" following the accident. On May 16, 2019, Ms. Hatchell reported to Dr. Wolf's assistant that her cervical symptoms had worsened following the April 14, 2019 accident. Her pain level had increased from 8 to 9/10, and she was now experiencing tingling in her entire right upper extremity and the last three fingers of her right hand.

It was Dr. Vu's opinion that these accidents caused an exaggeration of Ms. Hatchell's work-related neck injury. While Dr. Wolf could not say if Ms. Hatchell suffered a temporary exacerbation of her symptoms due to the accidents, his records indicated that the tenderness in her cervical spine and upper-back muscles increased extensively. Additionally, her left-arm strength decreased from 5/5 to a range of -4 to +4/5. Although some of the tenderness in her spine had resolved by March 5, 2020, Ms. Hatchell was still exhibiting some muscle weakness in her left arm.

Dr. Wolf testified that following these accidents, he "was working under the assumption that the pain generators were unchanged, simply that the severity was exacerbated." He stated that although he did not document any objective change in Ms. Hatchell's condition, she subjectively reported that her complaints had been aggravated. By March 5, 2020, Dr. Wolf determined that Ms. Hatchell had reached surgical maximum medical improvement (MMI). Pursuant to a February 13, 2020 functional capacity evaluation (FCE), she was permanently restricted to sedentary work, with the additional restrictions of no lifting, pushing, or pulling of more than five pounds and no repetitive activity. He stated that although Ms. Hatchell was at surgical MMI, she might benefit from "additional or more aggressive medical management."

Based on the foregoing evidence, we find that the WCJ's finding that Ms. Hatchell suffered an aggravation of her work-related neck injury as a result of the December 13, 2018 and April 14, 2019 accidents is "reasonable in light of the record

7

reviewed in its entirety." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). As the WCJ was presented with differing views of the evidence, "its choice between them cannot be manifestly erroneous or clearly wrong." *Id.* Accordingly, the WCJ's finding that Defendant proved Ms. Hatchell suffered an aggravation of her work-related neck injury was not manifestly erroneous.

However, this does not end our inquiry as Defendant had to satisfy the second element of La.R.S. 23:1101(C) before a finding could be reached that Ms. Hatchell forfeited her right to future workers' compensation benefits. Thus, Defendant had to establish proof of its payment of benefits as a result of the aggravation. This leads us to Ms. Hatchell's second assignment of error.

### *Assignment of Error Number Two*

In her second assignment of error, Ms. Hatchell argues that the WCJ erred in finding that she forfeited her right to workers' compensation benefits based on Defendant's failure to prove that it paid any additional benefits as a result of her subsequent accidents. We agree.

The WCJ specifically held that Defendant failed to prove the amount of its lien based on the amount of medical expenses it paid as a result of Ms. Hatchell's aggravated work-related injury. The judgment directly states that "no evidence was presented as to what portion of Claimant's motor vehicle settlements were attributable to the aggravation of Claimant's work-related cervical injury." This factual finding is also reviewed on appeal pursuant to the manifest error-clearly wrong standard. *Banks*, 696 So.2d 551.

After reviewing the record in its entirety, we cannot find, nor has Defendant pointed to, any evidence establishing that Defendant paid benefits to Ms. Hatchell, medical or indemnity, due to an aggravation of her work-related injury. Following the December 13, 2018 accident, Dr. Vu testified that she administered trigger point

8

injections due to Ms. Hatchell's increased pain. As reflected above, it was her opinion that these accidents caused an exaggeration of Ms. Hatchell's work-related neck injury. Her records indicate that a lidocaine mixture was injected into Ms. Hatchell's bilateral trapezius, levator scapulae, and right rhomboid muscles on January 23, 2019. However, Risk Management's records indicate that Dr. Vu had requested permission to administer cervical trigger point injections on May 1, 2018, prior to the December 13th accident and that it denied her request. Moreover, Defendant has not pointed to, and we could not find, any evidence establishing that Defendant paid for these injections. Other than the trigger point injections, the medical records reveal no change in the treatment offered to Ms. Hatchell by Dr. Vu.

It is further clear from Dr. Wolf's records that Ms. Hatchell was experiencing C6 and C7 radicular symptoms prior to the December 13, 2018 accident, as evidenced by the burning sensation down her left arm to her elbow and the numbness in her left ring finger and pinky. However, subsequent to that and the April 14, 2019 accident, Ms. Hatchell's neck and radicular pain were exacerbated such that Dr. Wolf changed his impression of her condition to include C6-7 disc disorder with radiculopathy. Dr. Wolf ordered an updated MRI based on Ms. Hatchell's increased pain and radiculopathy following the December 13, 2018 accident.

Although the MRI was performed, the record contains no evidence establishing that Defendant paid for it. However, it is clear that Risk Management denied payment pending a determination of causation. We could find no payment to Radiology Specialist LLC corresponding to a February 2, 2019 MRI in Risk Management's payment history. Dr. Wolf's medical records establish that Risk Management, on behalf of Defendant, paid him $6,937.00 on July 8, 2019, for performing fusions at both C5-6 and C6-7, a surgery that he had discussed with Ms. Hatchell prior to the accidents. Additionally, because the charged surgical rate of

9

$15,184.00 was contractually reduced by $8,614.93, it is unclear what, if any of that amount, was for the C6-7 fusion, even if it was not considered in Ms. Hatchell's surgical plan prior to the subsequent accidents.

Based on Defendant's failure to satisfy the second element of La.R.S. 23:1101(C), Ms. Hatchell was not required to obtain its approval prior to settling her claims with the insurers of the vehicles involved in those accidents. Thus, we find that the WCJ legally erred in finding that Ms. Hatchell forfeited her right to future workers' compensation benefits. Accordingly, the judgment finding that Ms. Hatchell forfeited her right to future workers' compensation benefits is reversed.

Based on this finding, we further amend the judgment to award Ms. Hatchell TTD for the additional time she was restricted from working. According to Dr. Wolf's records, Ms. Hatchell was restricted from working following the surgical removal of the C5-6 arthroplasty device and the anterior cervical discectomy and fusion at C5-6 and C6-7. This restriction lasted from May 28, 2019 through October 15, 2019. Although Ms. Hatchell was released to light-duty work on October 15, 2019, she was again restricted from working on November 20, 2019, after she experienced an exacerbation of her axial neck pain and an increase in her daily headaches following her return to work. On March 5, 2020, Dr. Wolf determined that Ms. Hatchell was at surgical MMI, and released her with a permanent restriction of sedentary work. Thus, the judgment is amended to award Ms. Hatchell additional TTD, at the rate of $328.60 per week, for the period of time between May 28, 2019 and October 15, 2019, and between November 20, 2019 and March 5, 2020, for a total of $12,618.24. We further remand the matter for a determination of whether Ms. Hatchell is entitled to SEBs following her March 5, 2020 release to sedentary work, and for a determination of all reasonable and necessary medical expenses not paid as a result of Defendant's termination of her workers' compensation benefits.

10

*Assignment of Error Number Three*

In her third assignment of error, Ms. Hatchell argues that she is entitled to penalties and attorney fees based on Defendant's termination of her workers' compensation benefits. We agree.

Ms. Hatchell claims that she is entitled to statutory penalties and attorney fees pursuant to La.R.S. 23:1201(F). However, as La.R.S. 23:1201(F) pertains to the untimely payment of benefits, we find, under the facts at issue, that the applicable penalty provision is La.R.S. 23:1201(I), which provides:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

In awarding penalties and attorney fees based on an employer's termination of workers' compensation benefits, the supreme court, in *Johnson v. Insurance Co. of North America*, 454 So.2d 1113, 1117 (La.1984), stated:

> An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. *Orgeron v. Tri-State Road Boring, Inc.*, 434 So.2d 65 (La., 1983). If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. *Walker v. Gaines P. Wilson & Son, Inc.*, 340 So.2d 985 (La.,1976). Penalties and attorneys' fees are awarded when an insurer discontinues compensation benefits without probable cause. *Guillory v. Travelers Insurance Co.*, 294 So.2d 215 (La., 1974).

In *Howard v. Rio Sol Nursing Home*, 21-824, p. 11 (La.App. 3 Cir. 6/15/22), 344 So.3d 216, 223, this court further explained:

> "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and

11

circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890. "In determining whether an employer's actions are arbitrary and capricious, the crucial inquiry is whether the employer can articulate an objective reason for terminating benefits at the time of the termination." *Doyal v. Vernon Par. Sch. Bd.*, 06-1088, p. 10 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, 909, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190.

Peggy Evans, Risk Management's claims adjuster, testified that Ms. Hatchell's indemnity benefits were stopped because her claim for TTD had prescribed; she failed to submit any requests for SEBs after November 23, 2019; and she was involved in three intervening accidents and settled claims related to two of the accidents. In regard to Ms. Hatchell's TTD benefits, she stated that it was Risk Management's position that the payment of SEBs does not interrupt the prescription for TTD. Thus, Ms. Hatchell's right to receive TTD was prescribed as it had been more than one year since she had last received TTD.

In the termination of Ms. Hatchell's SEBs, Ms. Evans testified that she relied on the medical records; February 18, 2018 and December 7, 2020 ISO reports that revealed the three accidents; and a January 11, 2021 letter from Defendant's counsel, which summarized Ms. Hatchell's deposition and revealed she had been involved in three accidents and had settled her claims in two of the accidents. Other than the February 18, 2019 letter to Dr. Wolf, Ms. Evans admitted that she made no further effort to discover whether these accidents caused an aggravation of Ms. Hatchell's work-related injury. She stated that for this finding, she relied on Dr. Wolf's January 31, 2019 report that Ms. Hatchell's work injury was aggravated by the December 13, 2018 accident.

In in the judgment awarding Ms. Hatchell TTD, the WCJ held:

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's continuous payment of [SEBs] to Claimant from the date of injury through the date of Claimant's June 2017 surgery interrupted prescription for [TTD], thereby entitling Claimant to [TTD] for the

period of June 27, 2017 through July 11, 2017. Based on Defendant's refusal to pay [TTD] due, Claimant's request for penalties and attorney's fees is granted in the amount of $2,000 and $7,500, respectively.

Considering the foregoing evidence and the WCJ's award of penalties and attorney fees based on Defendant's failure to pay TTD for the period following Ms. Hatchell's June 2017 surgery, which Defendant has not appealed, we find that Defendant acted arbitrarily and capriciously and without probable cause in terminating Ms. Hatchell's TTD. We further find that Ms. Evans's reliance on Dr. Wolf's January 31, 2019 report was unreasonable in light of his February 19, 2019 opinion, in which he related his diagnoses, treatment requests, and disability finding to Ms. Hatchell's work-related injury. Although Dr. Wolf's opinions predated Ms. Hatchell's April 14, 2019 accident, Ms. Evans admitted she made no effort to question Ms. Hatchell's physicians concerning the effect that accident had on her work-related injury. Thus, Dr. Wolf's opinion was the only opinion Defendant had regarding a possible aggravation of Ms. Hatchell's work-related injury prior to its January 21, 2021 termination of her benefits, as the physicians' depositions were not taken until after the termination. Accordingly, we find that Ms. Evans failed to make a reasonable effort to determine the exact nature of any possible aggravation suffered by Ms. Hatchell or that Defendant had paid benefits as a result of her aggravation prior to terminating her benefits.

Accordingly, we render judgment in favor of Ms. Hatchell to award her $8,000.00 in penalties pursuant to La.R.S. 23:1201(I). We further amend the WCJ's judgment to increase the amount of attorney fees awarded to her from $7,500.00 to $15,000.00.

13

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge is reversed to the extent that it holds that Theresa S. Hatchell forfeited her future compensation benefits; it is amended to award Theresa S. Hatchell an additional $12,618.24 in temporary total disability benefits and to increase the attorney fees awarded to $15,000.00; and it is remanded to the Office of Workers' Compensation for a determination of whether Theresa S. Hatchell is entitled to supplemental earnings benefits following her March 5, 2020 release to sedentary work and a determination of all reasonable and necessary medical benefits not paid to her as a result of St. Michael PFU, LLC's termination of her workers' compensation benefits. The judgment is affirmed in all other respects. Judgement is further rendered in favor of Theresa S. Hatchell to award her penalties in the amount of $8,000.00. Costs of this appeal are assessed to St. Michael PFU, LLC.

**AFFIRMED IN PART AS AMENDED; REVERSED IN PART; RENDERED; AND REMANDED.**